KIMBALL BROTHERS COMPANY, Appellant, v. PALATINE INSURANCE COMPANY, Appellee.

**TRIAL:** Transfer of Law Cause to Equity. A motion by plaintiff in
1 a strictly law action, made at the close of the trial, to transfer to equity for reformation of the contract, is properly overruled.

**INSURANCE:** Construction of Policy—Additions to Building. A policy
2 of insurance on a named building "and additions adjoining and communicating, on which there is no specific insurance," necessarily does not cover an "addition" which is covered by "specific insurance."

**EVIDENCE:** Parol as Affecting Writings—Unambiguous Contract.
3 Parol evidence is not admissible to vary, contradict, or add to the terms of an unambiguous, nonfraudulent policy of insurance.

*Appeal from Pottawattamie District Court.*—E. B. WOODRUFF, Judge.

, DECEMBER 11, 1923.

REHEARING DENIED MARCH 14, 1924.

ACTION at law, to recover upon an insurance policy. There was a directed verdict for the plaintiff for a part of the amount claimed by plaintiff, which defendant admitted to be due, and for which tender was made. Plaintiff appeals.—*Affirmed.*

*Kimball, Peterson, Smith & Peterson,* for appellant.

*Tinley, Mitchell, Ross & Mitchell,* for appellee.

PRESTON, C. J.—The errors relied upon for reversal are, stated in a general way for the present, that the court erred in not transferring the cause to the equity calendar; erred in the construction of the contract; erred in excluding offered evidence, and in directing a verdict for plaintiff. There is no dispute as to the pro-rata amount due from defendant to plaintiff, if the contention of appellant is not sustained.

1.   The case was being tried to a jury.   After the trial court had excluded much of plaintiff's offered testimony, and when the trial was practically concluded, plaintiff dictated into the record a motion to transfer to equity, as follows:

1. TRIAL: transfer of law cause to equity.

"Counsel for plaintiff moves to transfer this case to equity, and that the plaintiff be allowed to reform the policy in accordance with the intention of the parties as to what property the policies were to cover, in accordance with the premiums paid upon the policies, in accordance with the agreement."

The motion was overruled, and we think properly so. The action was brought by plaintiff at law. No equitable issues were presented by the pleadings, and no reformation was therein asked. We know of no rule or law by which a law action should be transferred to equity for trial, under the circumstances here shown.

2.   The controlling question in the case is in regard to the construction of the policy of insurance. A determination of that question governs largely the question as to the admissibility of the offered testimony. The policy sued on herein

2. INSURANCE: construction of policy: additions to building.

was issued on June 25, 1919, and expired on June 25, 1920. During the life of the policy, the buildings were partially destroyed by fire. The property consisted of different buildings. There were eight concurring policies besides defendant's, totaling $12,500. In addition to this, there was a policy of $500, which appellee contends was specific insurance on one building. The amount of the policy in suit was $1,000. Without considering the warehouse which was burned, and upon which there was a $500 policy, there was, at the time of the fire, the main factory building, a two-story and basement brick. This building was owned by plaintiff at the time all the insurance policies were taken out, and it had

been so owned for many years prior thereto. There were four additions to the main building, as follows: The office building on the front, a new machine room on the north side, a blacksmith shop and foundry on the west. Before the fire, appellant had secured insurance on the buildings referred to in the amount before stated, $12,500, and $500 specific insurance on the warehouse. The description of the property was the same in all the $12,500 policies. In addition to the buildings just described, appellant owned the warehouse, 10 or 12 feet from the main building. The warehouse was about 14 feet wide by 80 feet long. A part of it was one story and basement, and a part two stories and basement. It was a frame building. There was a platform between the two buildings, and an elevator that could serve both. At the time of the fire, appellant had an additional policy of insurance, before referred to, for $500, covering this warehouse and contents,—$200 on frame lumber warehouse and additions adjoining thereto and made a part of it, and $300 on stock of lumber while contained therein. The description in that policy covers the warehouse and stock of lumber that was burned and involved herein.

The question is whether or not the policy issued by the defendant covers the loss incurred by fire in the frame warehouse. The portions of the policy which seem to be material to this controversy, are: $2,150 on the two-story and basement brick building known as the main building, and additions adjoining and communicating *on which there is no specific insurance,* including foundation walls, platforms, etc.; $4,350 on fixed and movable machines, implements, appliances, etc., all while contained in or on above described building; $2,200 on stock, manufactured, unmanufactured, and in process of manufacture, consisting of elevators, scales, etc., all while contained in or on the above described buildings, or on any ground adjacent thereto, or in cars on track within 100 feet of said building and additions. Other amounts named are on the contents of the foundry and blacksmith shop, on which there is no specific insurance. Defendant's $1,000 policy contracts to pay the pro-rata share of the loss agreed on in the items above listed,—that is, appellee prorates with all other concurring insurance. The specific insurance carried by plaintiff upon the frame warehouse and con-

tents in the amount of $500 in the Farmers Fire Insurance Company, of York, Pennsylvania, is the only policy specifically covering that building and contents.

Appellant contends that the policy in suit covers the warehouse and the lumber therein. Counsel states their proposition thus: A building connected to another by platform between the two, with a driveway and elevator serving both buildings, and connected in the manner herein shown, is an addition, adjoining and communicating. Cases are cited to sustain this proposition. This might be so, if that were all there is to it. But this ignores the vital part of the clause as to specific insurance. The language is:

"On the two-story and basement brick, gravel roof building, known as the main building, and additions adjoining and communicating, on which there is no specific insurance."

There was specific insurance in the amount of $500 on the warehouse and contents. On the face of it, without reformation, it seems quite clear that the warehouse and lumber therein are not covered by the policy in suit. There is no ambiguity. For the purposes of this case, we must take the contract as written. A blanket policy excepting its application to property specifically insured will not cover such property so specifically insured. 1 Joyce on Insurance, Section 157a; *Fairchild v. Livermore & L. F. & L. Ins. Co.*, 51 N. Y. 65, 68; *Meigs v. Insurance Co. of North America*, 205 Pa. 378 (54 Atl. 1053). The case of *Lesure Lbr. Co. v. Mutual Fire Ins. Co.*, 101 Iowa 514, 523, also has a bearing on this question. The question presented is not a question whether the contract is or is not severable, as where several items are separately insured by the same policy.

3. Appellant sought, in the court below, to introduce parol testimony, objections to which were sustained. It is unnecessary to refer to all of such matters. In one instance, appellant sought to show the value of the warehouse and contents. Objections to this line of evidence were properly sustained, because, as we have already shown, the policy in suit does not cover the warehouse or contents. Again, on the theory that the policy in suit and some of the other policies were renewals of prior policies, they sought to go back to 1892, 30 years ago, to show conversations

3. EVIDENCE: parol, as affecting writings: unambiguous contract.

had between plaintiff or its predecessors and officers, with the agent, as to the intention of the plaintiff that a policy in the form of the policy herein was intended to cover all the property, and what was said, and the like.    Under some circumstances, such evidence might be admissible: for instance, if the case were in equity, and a reformation were being asked, or if there were ambiguity in the contract, and so on.    Some of the offered evidence would vary and contradict the plain terms of the contract.

Appellant cites authority that parol evidence is admissible to place the court in the position of the parties at the time of the making of the contract, and to determine the intention of the parties.    They cite *Emery & Co. v. American Ins. Co.*, 177 Iowa 4, and other Iowa cases, and 26 Corpus Juris 70.    But these cases were where the policies were ambiguous.    We have seen that such is not the situation here.

The plaintiff had the right to take out insurance with defendant on all the buildings, including the warehouse.    This was not done.    It also had the right to take out specific insurance on the warehouse.    This is what was done.    Fraud is not alleged. Since there was no ambiguity in the policy in suit, parol evidence to modify or change its terms was inadmissible.    *Kelsey v. Continental Cas. Co.*, 131 Iowa 207; *Miller v. Morine*, 167 Iowa 287; *Phillipy v. The Homesteaders*, 140 Iowa 562; *Jones v. Continental Cas. Co.*, 189 Iowa 678 (18 A. L. R. 1329, and note).

The foregoing propositions are, in the main, those covered in appellant's points and propositions.    One or two others which are not noticed are not controlling.    The judgment is—*Affirmed.*

Evans, Arthur, and Faville, JJ., concur.